# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANDRE WINGO,

        Plaintiff,

v.                                                      Case No. 07-CV-1112

MARK KLUCK, CHAD FREY,
PEGGY KENDRIGAN, MELISSA ROBERTS,
DONNA HARRIS, and JAN CUMMINGS,

        Defendants.

# ORDER

This matter is now before the court on the defendants' motion for summary judgment and the plaintiff's motion for sanctions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show . . . no genuine issue as to any material fact . . . and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion. Instead, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). For a dispute to be genuine the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *Bethlehem Steel Corp v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). However, a court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citing *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)).

The moving party bears the initial burden of showing that there are no material facts in dispute and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may satisfy this initial burden by pointing to the plaintiff's failure to introduce evidence sufficient to support the cause of action alleged. *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and designate specific facts to support its cause of action, showing a genuine issue for trial. *Id.* at 322-25.

When the moving party does not bear the burden of proof at trial, he can prevail on a motion for summary judgment by showing that there is an absence of evidence to support any essential element of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 322-23. However, where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248; *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F. Supp. 1130, 1149 (E.D. Wis. 1995).

## FACTUAL BACKGROUND

At the outset, the court notes that the plaintiff has submitted no admissible evidence in this case. With their motion for summary judgment, the defendants provided the plaintiff with the notice required by Civil Local Rule 56.1 (E.D. Wis.) in cases in which at least one party is proceeding *pro se*.[1] Civil L.R. 56.1 provided:

> (a) If a party is proceeding pro se in civil litigation and the opposing party files a motion for summary judgment, counsel for the movant must comply with the following procedure:
>
> (1) The motion must include a short and plain statement that any factual assertion in the movant's affidavit(s) or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit(s) or other admissible documentary evidence contradicting the factual assertion.
>
> (2) In addition to the foregoing statement, the text to Fed.R.Civ.P. 56(e) and (f), Civil L. R. 56.1, Civil L.R. 56.2, and Civil L.R. 7.1 must be part of the motion.

In this case, the defendants provided both the statement contemplated by Civil L.R. 56.1(a)(1) and copies of the rules listed in Civil L.R. 56.1(a)(2). Nevertheless, none of the documents the plaintiff filed in response the defendants' motion are sworn or based on admissible evidence. Although the plaintiff calls one of the documents an affidavit, it is not sworn, either by a notary or with the language set

---

[1] The Civil Local Rules were amended, effective, January 26, 2010, and the requirements for notice in *pro se* litigation are now contained in Civil L.R. 56(a)(1). However, the defendants filed their motion for summary judgment on January 14, 2010. Accordingly, the notice they gave the plaintiff, consistent with the prior version, Civil L.R. 56.1, is correct.

forth in 28 U.S.C. § 1746. The court can construe a sworn complaint as an affidavit at the summary judgment stage, *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996), but the plaintiff's complaint is not sworn. Accordingly, to the extent they are supported by admissible evidence, the court will adopt the defendants' proposed findings of fact as undisputed.

The plaintiff, Andre Wingo, was a state prisoner when he filed this action. He has since been released. At the times relevant to this case, the defendants were all employees of the Wisconsin Department of Corrections (DOC). Defendant Mark Kluck ("Agent Kluck") was the plaintiff's Probation/Parole Agent from February 27, 2002, through July 1, 2006. During that time, defendant Chad Frey, a Corrections Field Supervisor, supervised Agent Kluck. Defendants Melissa Roberts and Donna Harris also were Corrections Field Supervisors. Defendant Margaret Kendrigan was an Assistant Regional Chief, and defendant Janice Cummings was a Regional Chief.

In August 2005, Agent Kluck began working with the plaintiff in anticipation of his mandatory release to parole on December 13, 2005. When Agent Kluck received the plaintiff's mandatory release plan on August 24, 2005, he saw that the plaintiff proposed "transitional living" as his residence following his release. The plan also indicated that the plaintiff had not completed required programming during his incarceration, including Sex Offender Treatment, AODA Level 5B, Domestic Violence, and Cognitive Intervention Programming.

Based on the plaintiff's assaultive criminal history, his poor performance during previous periods of supervision, and his failure to address his rehabilitative

4

needs, the plaintiff was designated for "high risk supervision." Among other conditions of his release to parole, the plaintiff was required to have a proper and approved residence. The DOC decided to place the plaintiff at a halfway house where he could complete appropriate programming and prepare for his return to the community.

In early October 2005, Agent Kluck sent the plaintiff two authorizations, one for protected health information and one for non-health confidential information. The signed forms and related information were necessary for the plaintiff's placement at a halfway house. The plaintiff repeatedly refused to sign the forms.

On October 13, 2005, defendant Frey was out of the office so Agent Kluck consulted with defendant Roberts about the plaintiff's refusal to sign the necessary authorizations. Roberts told Agent Kluck to encourage the plaintiff to sign the releases and to proceed with revocation if he continued to refuse.

In an October 14, 2005 letter to Agent Kluck, the plaintiff acknowledged his refusal to sign the authorizations, even though he had been warned that he would be placed at the Milwaukee Secure Detention Facility (MSDF) if he did not sign them. That same day, Agent Kluck responded to the plaintiff's letter. Agent Kluck explained that the plaintiff might miss a timely halfway house placement if he did not sign the authorizations soon. Only a few halfway houses provide the programming that the plaintiff needed to complete, and placements at those facilities are limited and very much in demand.

5

On November 7, 2005, Agent Kluck once again consulted with defendant Roberts regarding the plaintiff. Agent Kluck relayed to Roberts the plaintiff's request that he be assigned to another probation/parole agent. Robert denied the plaintiff's request.

Also in November 2005, the plaintiff signed the authorization forms, but he used white-out to cover all of the information that had been designated on the forms for use in placing the plaintiff at a halfway house. The plaintiff also submitted an amended offender release authorization that simply listed his proposed housing arrangements as "to be determined."

On December 1, 2005, Agent Kluck consulted with defendant Harris about the altered authorizations the plaintiff submitted. Harris informed Agent Kluck that the altered forms were unacceptable for the plaintiff's placement at a halfway house. Harris told Agent Kluck that if the plaintiff signed properly completed authorizations, he could continue with the plaintiff's placement. If not, she instructed Agent Kluck to proceed with custody and revocation.

Agent Kluck met with the plaintiff on December 13, 2005. At that time, the plaintiff finally signed both authorization forms, as well as his "Rules of Community Supervision." The plaintiff was then referred to the Justice Thurgood Marshall House, a community-based residential facility that provides certified AODA treatment and other programming based on individual needs. This programming is designed to address offenders' substance abuse and criminal behavior in preparation for their return to the community. The plaintiff received a tentative start date of February 13,

2006. Until his start date, the plaintiff was housed first at MSDF, and then through Sex Offender Emergency Housing and the Electronic Monitoring Program.

In January 2006, the plaintiff informed the DOC that he did not want to be placed at the halfway house, and that he wanted to continue with "independent living" instead. The plaintiff was informed that he would be required to participate in the Justice Thurgood Marshall House program because he had not completed the necessary programming during his incarceration. This decision was approved by defendants Frey, Kendrigan and Cummings, based on the plaintiff's assaultive criminal history, his poor performance during previous periods of supervision, and his failure to address his rehabilitative needs. Defendants Robert and Harris also agreed with the plaintiff's placement in the halfway house, though neither had personal involvement in the decision to refer the plaintiff to that program.

On February 13, 2006, the plaintiff was placed at the Justice Thurgood Marshall House. He subsequently was terminated from the halfway house for rule violations and detained pending revocation proceedings. Ultimately, the plaintiff's parole was revoked, and the revocation was upheld on appeal.

**DISCUSSION**

The defendants argue that they are entitled to summary judgment on the plaintiff's claims because requiring him, as a condition of his parole, to reside at the a halfway house and complete rehabilitative programming did not violate the plaintiff's constitutional rights. They maintain that the placement without a hearing did not violate the plaintiff's due process rights because it was a condition of his

7

parole. The defendants also contend that they are entitled to absolute and/or qualified immunity for their actions.

The plaintiff insists that his placement at the halfway house constituted an involuntary placement in an inpatient mental health treatment facility after his mandatory release date. He maintains that, in order to make the placement, the defendants needed to comply with the requirements of Wis. Stat. § 51.20, which deals with involuntary commitment for mental health treatment. However, the plaintiff presents no evidence to support his assertions.

In reality, the plaintiff was placed at a halfway house as a condition of his parole so that he could complete additional programming that was required when he was sentenced. A state prisoner in Wisconsin is "entitled to mandatory release on parole" upon serving two-thirds of his sentence. Wis. Stat. § 302.11; *see Felce v. Fiedler*, 974 F.2d. 1484, 1491-92 (7th Cir. 1992) (Wisconsin's mandatory release statute creates a protectible liberty interest). Prisoners who reach their mandatory release date (full sentence less good time) are released on parole until expiration of the full term. However, the statute establishing mandatory release describes that inmates paroled on their mandatory release date are "subject to all the conditions and rules of parole ...." Wis. Stat. § 302.11(6). Wisconsin Administrative Code DOC 328 governs the DOC's supervision of inmates paroled after their mandatory release date and gives the DOC and its agents "substantial discretionary authority to develop rules and conditions of parole." *State ex rel. Macemon v. McReyolds*, 208 Wis.2d 594, 597, 561 N.W.2d 779 (Wis. Ct. App. 1997). States may properly subject

8

parolees to many restrictions not applicable to other citizens. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In *Macemon*, 208 Wis.3d at 598, the Wisconsin Court of Appeals determined that the DOC has the authority to require a mandatory release parolee to submit to electronic monitoring. Placement at a halfway house involves similar restrictions on liberty.

In *State ex rel. Riesch v. Schwarz*, 2005 WI 11, ¶ 30, 278 Wis.2d 24, 692 N.W.2d 219, the Wisconsin Supreme Court approved the immediate detention and revocation of a parolee on his mandatory release date because he stated he would not reside at the approved halfway house where his parole agent had placed him. They implicitly acknowledged the appropriateness of placement at a halfway house, even after the parolee's mandatory release date. This court concludes that no reasonable jury could find that the plaintiff's due process rights were violated by his parole placement at a halfway house.

Moreover, Wis. Stat. § 51.20 does not apply to the plaintiff's situation. It addresses the civil commitment of individuals for mental health treatment. The plaintiff was required, as a condition of his parole, to reside at a halfway house and complete certain programming. These are appropriate parole conditions.

Because the court finds no constitutional violation, there is no need to address the defendants' arguments regarding absolute and qualified immunity.

## MOTION FOR SANCTIONS

The plaintiff has filed a motion for sanctions. Along with his motion, the plaintiff filed a document entitled "Affidavit of Andrew Wingo." However, once again, it is not sworn and does not constitute admissible evidence.

In his motion, the plaintiff charges that the defendants disclosed a confidential treatment record to their attorneys without the plaintiff's consent. The plaintiff contends that he refused to provide the defendants with an authorization to release his medical information. Nevertheless, the defendants submitted a urinalysis treatment record from the plaintiff's time at the Justice Thurgood Marshall House in support of their motion for summary judgment. The plaintiff argues that the record was gathered by Wisconsin Community Services, Inc., and that their records are protected health information. The plaintiff seeks monetary and punitive sanctions for the disclosure of the record.

Rule 11 of the Federal Rules of Civil Procedure authorizes sanctions against a party or attorney who files frivolous pleadings, files pleadings for an improper purpose such as to harass, or makes allegations that they know have no basis in law or fact. The plaintiff's motion for sanctions fails to conform to the requirements of Rule 11(c)(2), and it will be denied.

Even if the motion complied with Rule 11, the plaintiff has not identified any misconduct by the defendants that would merit sanctions. A treatment record has not been produced as an exhibit. Rather, two of the defendants reference a positive marijuana test in their affidavits. Because those defendants have personal

knowledge of the plaintiff's test results and aver accordingly, it does not follow that they shared confidential medical records with their counsel. In any event, the plaintiff's urinalysis test results are not material to the court's decision on the defendants' motion for summary judgment.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for sanctions (Docket #39) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #24) be and the same is hereby **GRANTED** on the plaintiff's claims that his placement at a halfway house after his mandatory release date violated his right to due process under the Fourteenth Amendment, and this action be and the same is herewith **DISMISSED** on its merits.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge